NATIONAL WESTERN LIFE INSURANCE CO., Petitioner,

v.

Ella Mae ROWE, Individually and On Behalf of All Others Similarly Situated, Respondent.

No. 02–1010.

Supreme Court of Texas.

May 13, 2005.

**390**

J. Roger Williams, Jr., Catherine Lewis Robb, George & Donaldson, L.L.P., Austin, for petitioner.

Denise M. Nixon, G. Wade Caldwell, Jesse R. Castillo, James Todd Hedgepeth, Martin Drought & Torres, Inc., San Antonio, Joe K. Longley, Law Offices of Joe K. Longley, Austin, R. Stephen Woodfin, Law Office of Stephen Woodfin, Kilgore, for respondent.

PER CURIAM.

The trial court certified a nationwide class, and the court of appeals affirmed.[1] Because the trial court did not conduct the rigorous analysis of the issues to be tried that we required in *Southwestern Refining Co. v. Bernal*,[2] we reverse the court of appeals' judgment and remand the case to the trial court.

Since 1965, National Western Life Insurance Co. has sold child riders on life insurance policies. Each rider provided life insurance in $1,000 increments up to $5,000 for children listed in the application and any others thereafter born to or adopted by the applicant. Post-application children were covered without proof of insurability and without any obligation on the insured parent to notify National Western of their existence. Generally, coverage ceased when a child reached age 25, or the parent died, or the policy was no longer in effect.

National Western did not notify an insured parent when every child listed in the application was over 25. That occurrence would have been irrelevant if the parent had had a subsequent child because coverage under the child rider would have continued for that child. National Western continued to bill the insured parent for the child rider, leaving it to the parent to stop paying when he or she no longer had, or intended to have, a child under 25. Most of the riders, but not all, contained the following provision or one like it:

> Premiums are not due for this rider after it has stopped. If we accept a premium after termination, it does not mean that we are liable for benefits under this rider or that we waive the termination. We will refund any premiums so accepted.

Without contacting an insured, which it did not do, National Western had no way of knowing whether an insured was still paying for a child rider that no longer afforded coverage the parent desired. It refunded overpayments only on request. Over the years, it received only ten such requests. However, 81% of the policies lapsed, and the record before us contains no indication of the probable total amount of overpayments National Western received for child riders.

In 1977, Ella Mae Rowe bought a $15,000 life insurance policy with a $5,000 child rider covering her two children, the

---

1.  86 S.W.3d 285 (Tex.App.-Austin 2002).

2.  22 S.W.3d 425 (Tex.2000).

younger of whom was 7. She had no other children. After her younger child turned 25 in 1995, she continued to pay the child rider premium of $30 annually. In March 2000, she sued National Western on behalf of all its similarly situated policyholders for breach of contract, fraud, negligent misrepresentation, violations of the Texas Deceptive Trade Practices–Consumer Protection Act,[3] violations of article 21.21 of the Texas Insurance Code,[4] unjust enrichment, and a constructive trust. The gist of her complaint is that National Western designed the child rider so that policyholders likely would not notice that they no longer had coverage and would continue to make premium payments anyway. Rowe claims actual damages equal to the overpayments, plus statutory and punitive damages.

The trial court certified a nationwide, opt-out class of "[a]ll purchasers, who were residents of the United States at the time of purchase, of ... NWL child riders [on specified forms] issued from June 15, 1965 to the date of this Order [June 22, 2001]." The court found that this group would include over 12,000 persons resident in 41 states. The court's order excepts from the class "[o]wners of active child riders who have children under 25 years of age as of the date of this Order, as listed on the policy application forms". In its findings, the court stated that class notice will instruct a recipient to fill out and return an attached form if he or she had post-application children or wanted to retain coverage. The form states that a failure to return it may result in a presumption that the recipient had no post-application children and, for active policyholders, in termination of their child rider coverage. The court's findings do not explain why a recipient's inaction should warrant such a

presumption. The findings add: "On damages, it is expected that most of the damage calculation would be provided by expert testimony." The findings do not explain how this calculation would be made without determining whether or at what point policyholders no longer wanted child rider coverage.

National Western pleaded limitations as a defense, and Rowe pleaded the discovery rule and fraudulent concealment. The trial court found that the discovery rule issues could be tried by asking the jury to "decide when a reasonable policyholder had met the discovery rule test and the fraudulent concealment test." The court did not explain whether or how individual issues related to limitations will be determined. The court did conclude, however, that persons with policies terminated prior to January 1, 1980 should be excluded from the class because of "the increasing difficulty of locating policyholders, the further back the Class definition is extended". The findings do not explain the court's choice of that date.

The trial court concluded that Texas law should apply to all claims of all class members, essentially because National Western's activities are centered in Texas. The court does not appear to have considered whether laws in states in which class members reside would provide them greater relief, or whether those states have a particular interest in the claims being made, especially considering a state's interest in regulating the business of insurance as reflected in section 192 of the *Restatement of Conflict of Laws (Second)*, which states:

> The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effec-

3. Tex. Bus. & Com.Code §§ 17.41–.63.

4. Tex. Ins.Code art. 21.21.

tive choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.[5]

The trial court did not explain how it planned to dispose of issues of reliance with respect to claims in which reliance is an element.

■ The court of appeals affirmed the class certification.[6] In so doing, it stated: "We view the evidence in the light most favorable to the trial court's action, entertaining every presumption that favors its judgment."[7] In *Henry Schein, Inc. v. Stromboe*,[8] we held that this deferential standard of review, both as stated and as applied, conflicted with the requirement in *Southwestern Refining Co. v. Bernal*[9] that "actual, not presumed, conformance with [Rule 42 of the Texas Rules of Civil Procedure] remains ... indispensable."[10] This conflict, which gave us jurisdiction over the interlocutory appeal from a class certification order in *Schein*, likewise gives us jurisdiction in the present case.[11]

■ The trial court did not perform the rigorous analysis required by *Bernal* to determine whether class action requirements have been met in this case. The court did not explain why a policyholder's failure to respond to class notice should give rise to a presumption that the policyholder has no child under 25 and no longer desires child rider coverage, given that a common response to class action notices is to ignore them. The court stated that policyholders with children under 25 or still desiring child rider coverage "will be allowed to exclude themselves from the Class" at the end when proofs of claim must be submitted. But the trial court excepted such policyholders from the class definition, so it is not clear how the exclusion process is intended to work. The court gave no meaningful explanation for how it would try damages, actual and punitive; limitations issues, including discovery rule[12] and fraudulent concealment issues; and reliance, in causes of action for which reliance is an element.[13] The court did not explain why, given the number of individual issues, it determined that common issues predominate. The court did not explain why class members in another state should not have the benefit of that state's

5.  Restatement (Second) of Conflict of Laws § 192 (1971).

6.  86 S.W.3d 285 (Tex.App.-Austin 2002).

7.  *Id.* at 293.

8.  102 S.W.3d 675 (Tex.2002).

9.  22 S.W.3d 425 (Tex.2000).

10.  *Schein*, 102 S.W.3d at 690, *citing Bernal*, 22 S.W.3d at 434–435 (citations omitted).

11.  *See* Tex. Gov't Code §§ 22.001(a)(2), 22.225(b)(3), (c); *Schein*, 102 S.W.3d at 687–688. *Cf.* Act of June 11, 2003, 78th Leg., R.S., ch. 204, §§ 1.05, 23.02(a) and (d), 2003

Tex. Gen. Laws 850, 898–899 (providing that House Bill 4's amendments to jurisdictional provisions do not apply in this case because the petition for review was filed before the amendments' effective date); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 662 n. 4 (Tex.2004) (noting that the 2003 amendments did not apply).

12.  *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 n. 3 (Tex.1999) ("The party seeking the benefit of the discovery rule to avoid limitations has the burden of pleading and proving the discovery rule in a trial on the merits.")

13.  *See Schein*, 102 S.W.3d at 693–694; *Compaq*, 135 S.W.3d at 675–677.

law.[14] Finally, the court did not analyze whether, given the difficulties of proceeding with a nationwide class, many of whose members' claims predate the applicable limitations period by as much as 18 years, a class action is a superior means for resolving the dispute.

Accordingly, we reverse the judgment of the court of appeals and without hearing oral argument,[15] remand the case to the trial court for further proceedings.

Justice JOHNSON did not participate in the decision.

14. *See Schein,* 102 S.W.3d at 695–699; *Compaq,* 135 S.W.3d at 671–674.

15. *See* Tex.R.App. P. 59.1.