In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-536 CV


____________________



ADT SECURITY SERVICES, INC., Appellant



V.



HUNTER HAWA, INDIVIDUALLY AND AS REPRESENTATIVE OF OTHERS


SIMILARLY SITUATED, Appellee






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. A-171007






 MEMORANDUM OPINION


 Hunter Hawa (Hawa) sued ADT Security Services, Inc. (ADT) for breach of contract
and unjust enrichment. Hawa alleged that ADT failed to provide a three-month limited
warranty at no charge as provided under his contract and requested that the court certify a
class of similarly situated individuals under Rule 42. See Tex. R. Civ. P. 42. The trial court
granted Hawa's motion for class certification under Rule 42(b)(4) of the Texas Rules of Civil
Procedure. (1) ADT filed an interlocutory appeal pursuant to section 51.014(a)(3) of the Texas
Civil Practice and Remedies Code. 

 ADT raises five issues contesting whether the trial court appropriately certified the
class. First, ADT asserts the trial court abused its discretion by deciding the breach of
contract issue on its merits. Second, ADT asserts the trial court abused its discretion in
applying the parol evidence rule to prohibit extrinsic evidence of an undefined term, "Quality
Service Plan." Third, ADT contends the court improperly applied rules of contract
construction to render the term "Quality Service Plan" meaningless. Fourth, ADT contends 
the trial court failed to rigorously analyze whether class certification was proper. Fifth, ADT
asserts the trial court abused its discretion by certifying a class action without creating an
adequate trial plan.

 We hold that the trial court's order certifying the class fails to comply with Rule 42's
requirements. See Tex. R. Civ. P. 42. As a result, we reverse the certification order and
remand for proceedings consistent with this opinion. 

ADT'S CONTRACT AND HAWA'S BREACH OF CONTRACT CLAIM

 ADT provides residential security systems and monitoring to customers. When ADT
contracted with Hawa to install an alarm system in his home, he signed a Residential
Services Contract. The Residential Services Contract has a three-month limited warranty that
provides:

LIMITED WARRANTY. During the first three (3) months
after installation, we will repair or, at our option, replace any
defective part of the system, including wiring, and will make
any needed mechanical adjustments, all at no charge to you. We
will use new or functionally operative parts for replacements. 
This limited warranty is for your benefit only, and may not be
enforced by any other person. This limited warranty gives you
specific legal rights. The laws of the state where this Contract
was signed may also give you additional rights.

The Residential Services Contract also describes the restrictions in the limited warranty:


WARRANTY EXCLUSIONS. . . THE LIMITED
WARRANTY AND, IF PURCHASED, THE EXTENDED
LIMITED WARRANTY DO NOT APPLY IF WE
DETERMINE UPON INSPECTION THAT ANY OF THE
FOLLOWING CONDITIONS CAUSED THE NEED FOR
SERVICES: A. Damage resulting from accidents, Acts of God,
alterations or misuse; B. You fail to properly close or secure a
door, window or other point protected by an alarm device; C.
You fail to properly follow the operating instructions; D.
Trouble in a telephone line or due to interruption of power; E.
Repairs needed to window foil, security screens, exterior
mounted devices, or PROM (Programmable Read Only
Memory), batteries; F. Ordinary maintenance or wear and tear;
G. Alterations to your premises; or H. Alterations to the system
made at your request, or made necessary by a change to your
premises, damage to your premises or the alarm system, or for
any other cause beyond our control . . . 


ADT offered, and Hawa purchased, an extended limited warranty affording additional
warranty coverage for three years. The extended warranty provided:

EXTENDED LIMITED WARRANTY. If you have
purchased our Extended Limited Warranty, we will extend the
Limited Warranty explained above for the term of this contract. 
The Extended Limited Warranty will automatically renew for
successive two (2)-year terms at our then-current annual service
charge unless terminated by either party's written notice given
at least thirty (30) days before the end of the then-current term.


A box located on the first page of the contract, and apparently checked by ADT's
salesperson, reflects that Hawa opted to purchase the extended warranty. A corresponding
box labeled "Annual Service Charge," reflects that ADT charged Hawa $72.00. 

 Hawa contends that, during the first year of the warranty, the $72.00 Annual Service
Charge should have been reduced to $54.00 to account for the three months of free warranty
protection described in the Limited Warranty paragraph. In essence, he contends he paid
$72.00 when under the terms of his contract he should have been charged only $54.00. 

 However, ADT contends that the $72.00 charge is actually a nine-month charge,
prorated over 12 months. Essentially, ADT's position is that its annual charge was $96 per
year, and that $72 represents a charge for nine months. ADT explains that it did not
subsequently increase its annual charge in year two or year three of the contract "because
ADT decided that it would be too costly in terms of customer phone calls and possible
cancellations to change the annual charge after the first year." 

 ADT supported its position with the affidavit of Tim McKinney, the Vice-President
of Residential Sales for ADT, who testified that consumers who opted to buy the extended
limited warranty were charged a nine-month rather than a twelve-month rate. ADT also
included an internal memo dated March 6, 1989, reflecting that the charge in the first year
was prorated.

Customers opting to purchase the extended limited warranty also receive a "Quality
Service Plan." The term "Quality Service Plan" is not specifically listed in the definitions'
section of the Residential Services Contract, and the parties disagree on its meaning. Hawa
contends that the Quality Service Plan creates no contractual obligation beyond that created
by the Extended Limited Warranty. Hawa's argument is premised on the language used in
the contract, the absence of a separate definition of Quality Service Plan, and the integration
clause found in ADT's form contract.

ADT maintains that its Quality Service Plan is distinct from the Extended Limited
Warranty, and that because the term "Quality Service Plan" is not defined in the contract,
ADT should be permitted to introduce parol evidence to provide meaning to the term. ADT
further asserts that since parol evidence is required as to "Quality Service Plan," the focus
of any future trial would be whether each individual class member received independent
consideration in return for ADT's providing the Quality Service Plan. ADT reasons that the
necessity for parol evidence as to its bargain with individual customers would make the
individual transactions the focus of any trial. Because ADT contends its evidence would
need to address what each customer knew or expected to receive with respect to the Quality
Service Plan, ADT concludes that the necessity for the finder of fact to evaluate each contract
and the extent of its bargain with each of its customers destroys the predominance of any
common issues. 

Of further importance to Hawa's breach of contract claim is the integration and
merger clause of the Residential Services Contract, which provides:

ENTIRE AGREEMENT. THIS CONTRACT
CONSTITUTES OUR ENTIRE AGREEMENT. BY SIGNING
IT YOU ADMIT THAT YOU ARE NOT RELYING ON OUR
ADVICE OR ADVERTISEMENTS. YOU AGREE THAT
YOU AND WE ARE NOT BOUND BY ANY
REPRESENTATION, PROMISE, CONDITION,
INDUCEMENT OR WARRANTY, EXPRESS OR IMPLIED,
THAT IS NOT INCLUDED IN WRITING IN THIS
CONTRACT. THE TERMS AND CONDITIONS OF THIS
CONTRACT APPLY AS PRINTED WITHOUT
ALTERATION OR QUALIFICATION, UNLESS A CHANGE
IS APPROVED IN WRITING BY OUR AUTHORIZED
REPRESENTATIVE. THE TERMS AND CONDITIONS OF
THIS CONTRACT SHALL GOVERN EVEN IF YOU
SUBMITTED A PURCHASE ORDER OR OTHER
DOCUMENT WITH INCONSISTENT OR ADDITIONAL
TERMS AND CONDITIONS. 


Hawa argues that the contract's entireties clause bars ADT's parol evidence. ADT asserts
that it does not. 

CERTIFICATION ORDER


On December 8, 2004, the trial court entered an order certifying a class as follows:

 

 DAMAGE CLASS (TRCP 42(a) and 42(b)(4))

All persons or entities who: 1) entered into a services
contract with ADT to cover residential property located
in the State of Texas 2) during the four years prior to the
date of filing of this lawsuit, through the date of
certification 3) who elected the Quality Service
Plan/Extended Limited Warranty during the Limited
Warranty period of their services contract and 4) were
assessed and paid for the Extended Limited Warranty
during the Limited Warranted period of their services
contract.


The trial court also excluded some groups from the class. The exclusions are not pertinent
to our opinion, and the groups excluded by the trial court's certification order are not further
mentioned.

The trial court also made the following findings of fact and conclusions of law that
are relevant to this opinion:

(1) that the provisions of the Residential Services Contract are
"unambiguous";

(2) that the "unambiguous nature of the contract terms at issue
in this lawsuit and the comprehensive merger clause drafted by
ADT in Paragraph 27 dictate that no individual determination
will be necessary to resolve the claims and defenses in this
proposed class action";

(3) that the classes' claims "rest on a single common issue: was
ADT's assessment and collection of annual service charges for
the Quality Service Plan/Extended Limited Warranty during the
coverage period of the Limited Warranty a breach of contract?"; 

(4) that the resolution of this common issue "will be a matter for
the Court";

(5) that "no fact issue exists [as to individual damages] and
individual damages will be a matter for resolution by the Court"; 

(6) that "this matter can easily and efficiently be managed
through to a conclusion on a class-wide basis without impairing
or affecting in any way the substantive or procedural rights of
either side in this litigation"; and

(7) that "all issues presently raised or anticipated in this
litigation will be resolved by the Court making the involvement
of a jury unnecessary."





STANDARD OF REVIEW AND RULE 42(c)(1)(D)

In evaluating the appeal of a class certification order, we do not apply a deferential
standard of review, but evaluate the trial court's "'actual, not presumed, conformance with
[Rule 42 of the Texas Rules of Civil Procedure]. . . .'" National Western Life Ins. Co. v.
Rowe, 164 S.W.3d 389, 392 (Tex. 2005) (quoting Henry Schein, Inc. v. Stromboe,102
S.W.3d 675, 690 (Tex. 2002). Rule 42, among other requirements, provides that an order
granting or denying class certification shall state:

(i) the elements of each claim or defense asserted in the
pleadings;

(ii) any issues of law or fact common to the class
members;

(iii) any issues of law or fact affecting only individual
class members;

(iv) the issues that will be the object of most of the
efforts of the litigants and the court;

(v) other available methods of adjudication that exist for
the controversy;

(vi) why the issues common to the members of the class
do or do not predominate over individual issues;

(vii) why a class action is or is not superior to other
available methods for the fair and efficient adjudication
of the controversy; and

(viii) if a class is certified, how the class claims and any
issues affecting only individual members, raised by the
claims or defenses asserted in the pleadings, will be tried
in a manageable, time efficient manner.

Tex. R. Civ. P. 42(c)(1)(D). (2)


DID THE COURT FIND THAT ADT BREACHED ITS CONTRACT?



 With respect to the potential breach of contract claim, and with respect to the existing
record at the certification hearing, the trial court accurately identified the contractual issue
to be resolved at a trial. In its certification order, the trial court states: "Plaintiff's claims rest
on a single common issue: was ADT's assessment and collection of annual service charges
for the Quality Service Plan/Extended Limited Warranty during the coverage period of the
Limited Warranty a breach of contract?" The certification order states that the issue's
resolution "will be a matter for the Court." (3) The certification order does not expressly
indicate whether the trial court intended to decide this issue as a matter of law or to decide
the issue at a trial, with the trial judge acting as the trier of fact. However, the trial court's
statement in the certification order that the issue would be resolved without the necessity of
a jury could be interpreted to indicate the trial court's intent to dispose of the case and any
contested issue as a matter of law rather than at a trial.

 Under these circumstances, the certification order is ambiguous regarding whether the
trial court intended to try the contract issue as a finder of fact, or adjudicate the issue as a
matter of law. We also note that although no jury demand had been filed, either party could
still demand a jury trial. See Tex. R. Civ. P. 216. Further, in our view, both the breach of
contract issue and the damages issue are likely to involve the necessity of a trial by a finder
of fact. 

 The confusion created by the trial judge's statement that the breach of contract issue
was "a matter for the court" is further compounded by the certification order's reference to
the certified class as a "damage" class. This reference implies that the trial court had resolved
the contract issue adversely to ADT. However, at the class certification hearing, the trial
court indicated that it did not "believe that there [would] be much in the way of [a] fact
question." Thus, under the record on appeal, we are unable to determine whether the trial
court intended to try the breach of contract issue as a question of fact, or whether it intended
presently, or in the future, to adjudicate the issue as a matter of law. The Rules of Civil
Procedure require the certification order to reflect how the class claims will be tried. See
Tex. R. Civ. P. 42(c)(1)(D)(viii). Because the trial court's order does not clearly explain how
the claims are to be tried, it violates Rule 42.



HAWA'S UNJUST ENRICHMENT CLAIM 

 Hawa asserted in his suit that: "ADT has been unjustly enriched by the money it has
received in service charges for Extended Limited Warranties during the time period of the
Limited Warranty. Plaintiff and the Class are entitled to recover the amounts assessed as
service charges for Extended Limited Warranties during the Limited Warranty period so that
ADT will not be unjustly enriched."

 Hawa asserts his unjust enrichment count as an alternative to his breach of contract
claim, because Hawa's pleadings state that the unjust enrichment claim is made "[i]n the
event that the [Residential Service Contract is] determined to be vague or not [to] control the
issue of the lawsuit." "A party may recover under the unjust enrichment theory when one
person has obtained a benefit from another by fraud, duress, or the taking of an undue
advantage." Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). 
A claim for unjust enrichment may arise when the "person sought to be charged [has]
wrongfully secured a benefit or [has] passively received one which it would [be]
unconscionable to retain." City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc., 736
S.W.2d 247, 250 (Tex. App. - Corpus Christi 1987, writ denied). Hawa's unjust enrichment
count is set out as a separate claim from his breach of contract claim. "[T]heories of different
counts may be contradictory and may support inconsistent remedies. The allegations of one
count may not be used to impeach or contradict allegations in another count." 2 Roy W.
McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 8:57 at 397 (2d ed.
2003).

 Even though Hawa asserts his unjust enrichment claim as an alternative theory of
recovery, the trial court's certification order must explain how it intends to handle the claim. 
Rule 48 of the Texas Rules of Civil Procedure specifically allows a party to set forth
alternative claims. Tex. R. Civ. P. 48; Regency Advantage Ltd. Partnership v. Bingo Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996). When alternative theories are pled, the
evidence is sufficient to submit the alternative theories to the jury, and the defendant's acts
are the proximate cause of the same damages under both theories, a plaintiff is entitled to
make a post-verdict election of the recovery that affords the larger recovery. Birchfield v.
Texarkana Mem'l Hosp., 747 S.W.2d 361, 367 (Tex. 1987). 

 In summary, Texas law does not prohibit a party from proceeding to trial on
alternative theories. Since the trial court determined the contract to be unambiguous, we
recognize the possibility that the trial court does not intend to reach Hawa's unjust
enrichment claim. However, the certification order does not dispose of the unjust enrichment
count. The record reflects no summary judgment, dismissal, or severance of the unjust
enrichment claim. The trial court's certification order does not expressly address whether 
the trial court intends to try Hawa's unjust enrichment count, and gives no meaningful
explanation regarding how it would try Hawa's unjust enrichment theory. 

 Moreover, the certification order's silence on Hawa's unjust enrichment theory is
inconsistent with Rule 42's requirement that the court state the elements of each claim
asserted in the pleadings and, where alternative theories are pled, explain "how the class
claims and any issues affecting only individual members, raised by the claims or defenses
asserted in the pleadings, will be tried in a manageable, time efficient manner." Tex. R. Civ.
P. 42(c)(1)(D)(i),(viii). The trial of an unjust enrichment claim would likely vary
significantly from that of a breach of contract claim. The issues submitted to the jury on an
unjust enrichment claim, the evidence that is relevant and admissible, and the measure of
damages might differ significantly from a breach of contract claim. The certification order
before us fails to address how Hawa's unjust enrichment count would be tried, and whether
the various elements involving class certification are met regarding this count under the
requirements of Rule 42(b). 

 In National Western Life Ins. Co. v. Rowe, 164 S.W.3d 389 (Tex. 2005), the Texas
Supreme Court recently reversed a trial court class certification order in a case that included
an unjust enrichment count. The reason offered by the Rowe Court, in part, in reversing the
class certification order was the absence of any meaningful explanation of how the court
would try damages. Id. at 392. The Supreme Court concluded that "[t]he trial court did not
perform the rigorous analysis required by [Southwestern Refining Co. v.] Bernal, [22 S.W.3d
425 (Tex. 2000)] to determine whether class action requirements have been met in this case." 
Id. 

 In Union Pacific Resources Group, Inc. v. Hankins, 111 S.W.3d 69 (Tex. 2003), and
in Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675 (Tex. 2002) the Texas Supreme Court
also reversed orders certifying classes where the claims included counts for unjust
enrichment. In Hankins, the Court concluded that a lack of commonality existed when, under
the facts of that case, the damages recoverable were not subject to generalized proof. See
111 S.W.3d at 74. In Stromboe, the plaintiffs' primary claim was for breach of contract but
other claims, including unjust enrichment, were asserted. The Texas Supreme Court noted:

Even if the court were correct that the plaintiffs' primary action
is for breach of contract and their primary damage claim
disgorgement--and it is far from clear to us that this is an
accurate assessment of the plaintiffs' contentions-- the plaintiffs
have not abandoned their other actions and damage claims, and
there is nothing in the trial court's order or the court of appeals'
opinion to indicate how these other issues are to be tried.

 

102 S.W.3d at 688.


 The certification order before us does not discuss how the court intended to resolve
Hawa's unjust enrichment claim. Because the certification order does not rigorously analyze
the unjust enrichment claim, dispose of it, or inform us of how such a claim would be tried,
the order does not comply with the requirements of Rule 42.


DAMAGES

 With respect to damages, the certification order contemplates that damages will be
resolved as a matter of law. The trial court's certification order states, "Indeed as both
parties are relying on the same records for a damage determination, no fact issue exists and
individual damages will be a matter for resolution by the Court. . . . "[A]ll issues presently
raised or anticipated in this litigation will be resolved by the Court making the involvement
of a jury unnecessary."

 While a trial court may examine and look at issues, and potential evidence, in
determining whether to certify a class, "[d]eciding the merits of the suit in order to determine
the scope of the class or its maintainability as a class action is not appropriate." Intratex Gas
Co. v. Beeson, 22 S.W.3d 398, 404 (Tex. 2000). With respect to damages in breach of
contract cases, the general rule is that "the complaining party is entitled to recover the
amount necessary to put him in as good a position as if the contract had been performed." 
Smith v. Kinslow, 598 S.W.2d 910, 912 (Tex. Civ. App. - Dallas 1980, no writ). 

 Generally, in a breach of contract case, the normal measure of damages is just
compensation for the loss or damage actually sustained, commonly referred to as the benefit-of-the-bargain. See SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer
Sciences, Inc., 128 S.W.3d 304, 317 n. 6 (Tex. App. - Dallas 2004, no pet.). Although not
entirely clear, it appears to have been the trial court's view that a benefit-of-the-bargain
measure of damages would apply. If, upon trial, ADT was shown to have breached its
contract by failing to provide three free months of limited warranty service, it appears the
trial court intended to look at the business records of ADT and evaluate the damages on an
individual basis without allowing a trier of fact to resolve any factual dispute.

 We do not disagree that a benefit-of-the-bargain measure would likely apply to
Hawa's claims. But we disagree that damages are likely to be capable of being resolved as
a matter of law. ADT argues on appeal, and argued in the trial court, that it provided not
only the Extended Limited Warranty for the payment of the annual charge of $72, but also
a Quality Service Plan. In our view, ADT's contention that the Quality Service Plan had
value, and ADT's evidence concerning the bundling of the Quality Service Plan with the
Extended Limited Warranty, raises the potential that the evidence at trial would likely be
sufficient to create a fact issue on damages flowing from any alleged breach by ADT's
alleged failure to provide three months of free warranty service. 

 ADT argues that the consideration, in part, provided to the putative class members
was its Quality Service Plan. Therefore, according to ADT, "This additional benefit, by
itself, would justify Hawa's first three monthly $6 payments of the Annual Service Charge." 

 At oral argument, ADT agreed that the Extended Limited Warranty and Quality
Service Plan were never sold separately. As reflected by ADT's contract, the service option
of "Extended Limited Warranty/Quality Service Plan" is on the same line in the "Services
to be Provided" section of the contract and would be selected by checking a single box at the
side of the option. The services provided for these charges by ADT are "bundled," and the
services cannot be purchased separately. Thus, because the value, if any, of the Quality
Service Plan is contested, and because the service is bundled, a simple mathematical
calculation of $6 per month as damages would not necessarily follow from ADT's alleged
failure to provide three free months of warranty service. 

 Because the trial court plan failed to discuss how it would resolve disputed issues of
fact and indicates that it intended to dispose of the issue on motion practice, the current trial
plan is inadequate. The trial court erred in deciding at the class certification stage, on this
record, that damage claims would be resolved as a matter of law.

PAROL EVIDENCE OF CONTRACT TERMS

 ADT contends that class certification is not appropriate because individual issues
predominate. ADT argues that parol evidence will be needed to determine the meaning of
its contract with each individual class member. ADT's argument revolves around the
meaning of "Quality Service Plan" as used in ADT's Residential Service Contract.

 "Quality Service Plan" is found in three places in ADT's contract. In Section 2 of
the Residential Service Contract under the title "Services to be Provided," there is a line for
"Quality Service Plan/Extended Limited Warranty," and a box beside that term is checked
if the customer purchases the Extended Limited Warranty. Section 4 of the contract contains
a line to be initialed if the customer declines the "Quality Service Plan/Extended Limited
Warranty." Finally, the Table of Contents refers to Section 14 of the contract as relevant to
"Extended Limited Warranty (QSP)." Section 14 of the contract, however, only refers to
Extended Limited Warranty, and does not expressly define the benefits of ADT's Quality
Service Plan. There are no other sections of the contract that mention the term "Quality
Service Plan." 

 Because the term is not expressly defined, ADT asserts that the term requires it to
introduce evidence extrinsic to the contract to give meaning to the contract with respect to
the meaning of "Quality Service Plan." If it were allowed to introduce evidence of the
meaning of "Quality Service Plan," ADT contends that its evidence would prove that
"ADT's QSP provides for a discount on non-warranty covered repairs and an extension of
the limited warranty through the contract's full term." We note, however, that ADT's
position that its contract provided customers with a discount on non-warranty covered repairs
is not mentioned as an obligation within the four corners of the Residential Service Contract. 
 Hawa asserts that the integration clause of ADT's contract bars ADT from introducing
evidence that adds to or varies the written terms of the contract. Where a written agreement
is fully integrated, the parol evidence rule precludes the enforcement of inconsistent prior or
contemporaneous agreements. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30,
32 (1958). "Merger, with respect to the law of contracts, refers to the extinguishment of one
contract by its absorption into another contract and is largely a matter of the intention of the
parties." Smith v. Smith, 794 S.W.2d 823, 827-828 (Tex. App. - Dallas 1990, no writ). "An
integration clause is in essence the merger doctrine memorialized." Id. at 828. 

 Under Texas law, however, the existence of an integration provision does not always
prohibit the introduction of testimony to show the terms of the agreement where the contract,
on its face, shows that it is not fully integrated. See Bob Robertson, Inc. v. Webster, 679
S.W.2d 683, 688-89 (Tex. App. - Houston [1st Dist.] 1984, no writ). Also, a court in
evaluating a contract may conclude that the contract is integrated with respect to some of its
terms, but not integrated with respect to others. Magnolia Warehouse & Storage Co. v.
Davis & Blackwell, 108 Tex. 422, 195 S.W. 184, 185 (1917). 

 The issue presented in this appeal is whether the contract is fully integrated with
respect to the meaning of ADT's Quality Service Plan. We expressly do not address whether
the contract is fully integrated in all respects, since the issue before us is limited to whether
this particular aspect of the contract is integrated.

 By including an integration clause, the parties intended the contract to reflect the
terms of the agreement between them without the need to resort to parol evidence. Also,
neither of the parties pled that the contract was ambiguous; so the question of the term's
meaning is a question of law for the court. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983)). A contract is unambiguous if it can be given a definite or certain legal meaning. 
DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999). 

 The trial court found ADT's contract to be unambiguous. With respect to the meaning
of the term "Quality Service Plan," we also conclude that the agreement Hawa signed is not
ambiguous as it can be given a definite legal meaning. 

 In interpreting a contract, we look at the contract as a whole. Forbau v. Aetna Life
Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). When the Residential Service Contract is viewed
as a whole, we find that the meaning of ADT's "Quality Service Plan" can be given a definite
legal meaning. 

 First, we observe that the limited warranty and extended limited warranty are subject
to various exclusions in Section 15. These exclusions include damage from accidents or Acts
of God. Thus, there are some circumstances not covered by either the limited warranty or
the extended warranty where ADT's equipment might fail to operate and ADT's customers
might reasonably call upon ADT to repair ADT-installed equipment. Recent experience with
the loss of services due to Hurricanes Katrina and Rita are possible examples of situations
where ADT customers might desire service that would probably not be covered by ADT's
limited or extended warranties. 

 Under such a circumstance, we further observe that Section 17 of the contract requires
ADT, at its customer's request, to replace ADT provided equipment that is otherwise
excluded from the warranty "at [its] then-prevailing prices." Thus, the contract contemplates
that ADT would provide equipment and services that under some circumstances were not
covered by its warranties at its then prevailing prices. In other words, in such a circumstance,
ADT contractually bound itself to provide equipment and services at its existing prices. As
stated by the Texas Supreme Court in Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513,
243 S.W.2d 154, 157 (1951):

[A] contract is ambiguous only when the application of pertinent
rules of interpretation to the fact of the instrument leaves it
genuinely uncertain which one of two or more meanings is the
proper meaning. . . . In other words, if after applying established
rules of interpretation to the contract it remains reasonably
susceptible to more than one meaning it is ambiguous, but if
only one reasonable meaning clearly emerges it is not
ambiguous.


 In our view, property damages to homes related to Hurricanes Katrina or Rita
demonstrate that a term in a contract creating a contractual obligation to replace or repair
equipment at prevailing prices in circumstances such as those not otherwise covered by the
express terms of the warranties are obligations that may have significant value. The services
that ADT contractually bound itself to provide, that were not otherwise covered by the
warranty, in our view constitute the Quality Service Plan provided under ADT's contract.

 Construing the contract in this manner upholds the integration clause of ADT's
contract and creates a consistent result for all ADT customers. Because the term "Quality
Service Plan" is capable of being given meaning without the necessity of parol evidence, we
find no error in the trial court's determination that it intended to exclude ADT's evidence that
its Quality Service Plan obligated it to give customers discounts on its usual price. We
further point out, however, that whether ADT's proffered evidence would be admissible in
a trial involving an unjust enrichment claim is not before us. 

CONCLUSION

 "[A] trial plan is required in every certification order to allow reviewing courts to
assure that all requirements for certification under Rule 42 have been satisfied." State Farm
Mut. Auto. Ins. Co. v. Lopez, 156 S.W.3d 550, 556 (Tex. 2004) (emphasis in original). As
discussed above, the trial court's certification order fails to demonstrate that all of Hawa's
claims, his potential damage theories, and the court's trial plan meet the requirements of Rule
42. The certification order dated December 8, 2004 is reversed and the cause remanded for
further proceedings. We need not address the other issues raised because the remaining
arguments and issues will likely be impacted by the trial court's additional proceedings. 

 REVERSED AND REMANDED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on September 1, 2005

Opinion Delivered November 3, 2005

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. This suit was instituted under former Rule 42(b)(4) of the Texas Rules of Civil
Procedure. See Tex. R. Civ. P. 42(b)(4)(Vernon 2003)(repealed 2003). In 2003, the Texas
Supreme Court deleted the provisions of former Rule 42(b)(3) and renumbered all pertinent
parts of former Rule 42(b)(4) as current Rule 42(b)(3). See Tex. R. Civ. P. 42(b)(3); see
Order Amending Texas Rules of Civil Procedure, Oct. 9, 2003 (Tex. Misc. Docket No. 03-9160). Although this suit was instituted prior to the changes in Rule 42, the trial court's
certification occurred after Rule 42 was amended. We find no substantive changes in the
former Rule 42 and the current Rule 42 relevant to the issues in this appeal, no reason the
current version of the Rule cannot be applied, and no injustice in the application of the
current Rule. Thus, we analyze the issues under, and cite to the current version of Rule 42
as the applicable Rule. See also Tex. R. Civ. P. 814 (explaining that the Rules of Procedure
govern "actions brought after they take effect, and also all further proceedings in actions then
pending, except to the extent that in the opinion of the court their application in a particular
action pending when the rules take effect would not be feasible or would work injustice, in
which event the former procedure shall apply"). 
2. For the same reasons as explained in footnote 1, we cite to the current rule. Although
not identical to the express language in the former rule, the current rule does not expand the
interpretation of the requirements that courts perform a rigorous analysis before certifying
a class as discussed by the Texas Supreme Court in Southwestern Refining Co. v. Bernal, 22
S.W.3d 425 (Tex. 2000) and Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675 (Tex. 2002). 
3. The record also reflects that no party, as of the date of the certification order, had
filed a request for a jury trial.