COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-253-CV

 

RAY
RIDGEWAY, RICHARD FOLEY                                       APPELLANTS

AND RICHARD STARKEY                                               AND APPELLEES

                                                                                                        

 

                                                   V.

 

BURLINGTON NORTHERN
SANTA                                           APPELLEES

FE CORP. AND THE
BURLINGTON                                 AND APPELLANTS

NORTHERN
AND SANTA FE RAILWAY 

COMPANY


                                                                                                        

                                              ------------

 

            FROM
THE 48TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Ray Ridgeway, Richard Foley,
and Richard Starkey (collectively, appellants) appeal from the trial court=s order denying class action status to their case against Burlington
Northern Santa Fe Corp. and The Burlington Northern and Santa Fe Railway
Company (collectively, BNSF).  In five
issues, appellants contend that the trial court abused its discretion by
denying their request for class treatment. 
BNSF has also filed a conditional cross-appeal, in the event we sustain appellants= issues.  Because we conclude
that the trial court did not abuse its discretion by denying appellants= request for class certification, we affirm the trial court=s order without reaching BNSF=s cross-appeal.

                      II. 
Background Facts and Procedural History








In 1988, to fight off a
hostile takeover, BNSF distributed $4.7 billion to its shareholders as a
special distribution on more than 250 million shares of stock.  Before making the special distribution, BNSF
conducted a study to determine the Amix@ of the
distribution for tax purposes.  To the
extent the distribution was paid out of BNSF=s earnings and profits (E&P), it was required to be characterized
as a dividend and was taxable as ordinary income to the shareholders.  Any part of the distribution that exceeded
the E&P was considered a return of capital and was not taxable, to the
degree that it did not exceed the shareholders= purchase price for their respective shares.  Instead, the return of capital portion of the
distribution was to be credited against the shares= basis, which would then reduce the investment deducted from the sales
price of the shares for tax purposes in the event the shares were sold. In October 2000, appellants filed the
underlying suit against BNSF on their own behalf, and on the behalf of a
world-wide class of more than 200,000 shareholders, asserting causes of action
for negligence per se, common law negligence, breach of contract, and breach of
fiduciary duty, and seeking to recover damages allegedly resulting from an
error in BNSF=s special
distribution mix study.  Appellants
allege that the study grossly overstated the amount of the special distribution
characterized as a taxable dividend and grossly understated the amount of the
distribution characterized as a nontaxable return of capital.  Appellants allege that this error had a
direct impact on their 1988 income tax payments, causing the class as a whole
to pay federal income taxes on approximately $2.7 billion of the distribution
amount that was mischaracterized as a dividend. 
Appellants further allege that the mischaracterization Aadversely impacted the ability of the class members to make rational
financial decisions,@ including
decisions regarding tax planning, estate planning, and evaluations of the
corporate actions BNSF has taken in the years following the 1988 special
distribution. 

After numerous hearings
spanning more than two years, the trial court entered an order denying
appellants= request for
class certification.  In its order, the
trial court made the following findings and conclusions, among others:

$The
substantive issues, including the elements of the causes of action, the
defenses asserted by the parties, and the burdens of proof on those elements,
are governed by Delaware law;

 

$The
procedural issues, including class certification requirements, are governed by
Texas law;

 








$The
essential elements of Texas Rule of Civil Procedure 42 have not been satisfied
because the actual damages issues are not manageable and appellants cannot
maintain a class action under rule 42(b)(3). 

 

This interlocutory appeal followed. 

                                    III.  Standard of Review

Trial courts enjoy a wide
range of discretion in deciding whether to maintain a lawsuit as a class
action.[1]  Our review of the trial court=s decision on appeal is strictly limited to determining whether there
has been an abuse of discretion in denying certification.[2]  A trial court abuses its discretion when
it  (1) acts arbitrarily or unreasonably,
without reference to any guiding rules or principles;[3]  (2) does not properly apply the law to the
undisputed facts;[4]  or (3) rules on factual assertions not
supported by the record.[5]  A trial court does not abuse its discretion
when it bases its decision on conflicting evidence.[6]








In determining whether the
trial court abused its discretion in denying certification, we do not view the
evidence in the light most favorable to the trial court=s decision, nor do we entertain every presumption in favor of the
court=s decision.[7]  Instead, we determine whether the trial
court, before ruling on a class certification, performed a Arigorous analysis@ of whether all prerequisites to certification had been met.[8]








Texas law does not require a
trial court to certify a class action upon a determination that the facts
sufficiently satisfy Texas Rule of Civil Procedure 42.[9]  Thus, an appellant seeking to reverse an
order denying class certification faces a formidable task.  Appellants must demonstrate not only that
they satisfied all the rule 42 requirements for certification, but also that
the trial court=s refusal to
certify the class was legally unreasonable under the facts and circumstances of
the case.[10]  So long as the trial court acted rationally
in the exercise of its discretion, we will uphold its ruling denying
certification.[11]

                 IV.  The
Predominance Requirement of Rule 42(b)(3)

Class actions must satisfy at
least one of the subdivisions of rule 42(b),[12]
which are as follows:

An action may be maintained as a class action if
the prerequisites of [rule 42(a)] are satisfied, and in addition:

 

(1)    the prosecution of separate actions by or
against individual members of the class would create a risk of

 

(A)    inconsistent
or varying adjudications with respect to individual members of the class which
would establish incompatible standards of conduct for the party opposing the
class, or

 

(B)    adjudications
with respect to individual members of the class which would as a practical
matter be dispositive of the interests of the other members not parties to the
adjudications or substantially impair or impede their ability to protect their
interests; or

 








(2)    the party opposing the class has acted or
refused to act on grounds generally applicable to the class, thereby making
appropriate final injunctive relief or corresponding declaratory relief with
respect to the class as a whole; or

 

(3)    the questions of law or fact common to the
members of the class predominate over any questions affecting only individual
members, and a class action is superior to other available methods for the fair
and efficient adjudication of the controversy.[13]

 

Appellants assert that Athe application of settled legal principles to the facts of this case
leads to the conclusion that the litigation is suitable for class treatment.@  Specifically, they assert that
this class action satisfies subdivision 42(b)(3).  The trial court found, however, that the
predominance requirement of rule 42(b)(3) had not been satisfied because the
actual damages issues are not manageable. 
The trial court stated,

[T]he determination of actual
damages, if any, is an issue affecting individual class members on a
class-member-by-class-member basis.  The
issue of whether and to what extent each class member has suffered actual
damages will be the object of most of the efforts of the litigants and the
Court.  Due to the many individual  issues concerning payment of income taxes by
each class member, as applied to the number of class members in Plaintiffs= proposed class, this case cannot be tried in a manageable,
time-efficient, yet fair manner. 








Rule 42(b)(3)=s predominance requirement is one of the most stringent prerequisites
to class certification.[14]  To aid courts in determining if rule 42(b)(3)
certification is appropriate, the rule establishes a list of nonexhaustive
factors to consider:

(A) the interest of members
of the class in individually controlling the prosecution or defense of separate
actions;  (B) the extent and nature of
any litigation concerning the controversy already commenced by or against
members of the class; (C) the desirability or undesirability of concentrating
the litigation of the claims in the particular forum;  and (D) the difficulties likely to be
encountered in the management of a class action.[15]

The test for predominance is
not whether common issues outnumber uncommon issues, but Awhether common or individual issues will be the object of most of the
efforts of the litigants and the court.@[16]  If, after common issues are
resolved, presenting and resolving individual issues is likely to be an
overwhelming or unmanageable task for a single jury, then common issues do not
predominate.[17]  Thus, if it is not determinable from the
outset that individual issues can be considered in a manageable,
time-efficient, yet fair manner, certification of the class is not appropriate.[18]








                                  V.  Nominal Damages Class

In their first issue,
appellants contend that the predominance requirement could be satisfied by
certifying a nominal damages class for purposes of appellants= breach of contract and breach of fiduciary duty claims.

Nominal damages are available
under Delaware law for breach of contract and breach of fiduciary duty.[19]  Nominal damages generally are not recoverable
under Delaware law for negligence, however, because damages are an element of
the cause of action itself, which must be proven for the plaintiff to recover.[20]








In this case, two of
appellants= four causes
of action against BNSF are negligence per se and common-law negligence
claims.  To prevail on these negligence
claims, each shareholder class member would be required to prove that the
shareholder suffered actual damages as a result of BNSF=s alleged mischaracterization of the special distribution.[21]  In proving actual damages, common questions
of fact would not predominate over questions affecting only individual members;[22]
to the contrary, individual questions of fact regarding each individual
shareholder=s damages
would predominate, and Aindividual
issues [would] be the object of most of the efforts of the litigants and the
court.@[23]   Therefore, merely certifying
a nominal damages class on the class members= breach of contract and breach of fiduciary duty claims would not
adequately resolve the difficulties likely to be encountered in the management
of the damages issues in this case.[24]








Accordingly, we hold that the
trial court did not abuse its discretion by refusing to certify a nominal
damages class under the facts and circumstances of this case.[25]  We overrule appellants= first issue.

                                     VI.  Liability-Only Class

In their second issue,
appellants contend that, because the trial court agreed that the liability
issues of their claims against BNSFCduty, breach, and causationCwere suitable for class certification, the trial court abused its
discretion by failing to apply procedural rule 42(d)(1) and certify a
liability-only class.  We disagree.  Rule 42(d)(1) provides that, A[w]hen appropriate . . . an action may be brought or maintained
as a class action with respect to particular issues.@[26]  While the permissive language
of this rule authorizes a trial court to certify the subparts of a cause of
action for class treatment Awhen appropriate,@ it does not mandate that it do so.[27]  Appellants cite no legal authority that holds
otherwise.








Moreover, certifying a
liability-only class would not resolve the unmanageable damages issues and,
therefore, would not satisfy the predominance requirement of rule
42(b)(3).  Ideally, Aa judgment in favor of the class members should decisively settle the
entire controversy, and all that should remain is for other members of the
class to file proof of their claim[s].@[28]  In this case, a judgment in
favor of the class members on the liability issues would not settle the entire
controversy.  Instead, after the
liability issues were resolved, the individual damages issues would still have
to be tried, which, as we have discussed, would be an overwhelming and
unmanageable task for a single jury, or even a single court.  If, after common issues are resolved,
presenting and resolving individual issues is likely to be an overwhelming or
unmanageable task for a single jury, then common issues do not predominate for
purposes of rule 42(b)(3),[29]
and class certification is not appropriate.[30]

Accordingly, we hold that the
trial court did not abuse its discretion by refusing to certify a
liability-only class.  We overrule
appellants= second
issue.

 

 








                              VII. 
Aggregated Damages Model

In their third and fifth
issues, appellants assert that the trial court abused its discretion by
refusing to employ an aggregated damages model to determine class-wide
damages.  In support of their argument,
appellants cite Delaware cases which hold that damages that are difficult to
quantify need only be proven with reasonableCrather than actualCcertainty.[31]  Appellants assert that an aggregated damages
model utilizing statistical evidence may be used to establish the reasonable
probability of such damages,[32]
and they contend that they demonstrated how the total, or aggregate, amount of
taxes overpaid by the class as a whole could be calculated through the
application of mathematical modeling and statistical analysis. 








Assuming, without deciding,
that the aggregated damages model proposed by appellants is appropriate for use
in a class action,[33]
appellants have not demonstrated that the individual class members= damages in this case would be difficult to ascertain.  Appellants have, in fact, conceded that some
class members= damages are
Aclearly provable and calculable.@  Therefore, it was not an abuse
of discretion for the trial court to refuse to employ appellants= proposed aggregated damages model to determine class-wide damages
under the facts of this case.








More importantly, the use of
statistical evidence to establish causation and damages in a case such as this
would improperly shift the burden of proof to BNSF and deprive BNSF of its
right to a jury trial on these issues.[34]  Delaware law requires a plaintiff to prove
both causation and damages in order to recover from the defendant.[35]  The resolution of these issues will vary from
class member to class member based on highly individualized factors.[36]













For example, in this case,
over 250 million shares of BNSF stock were held in 1988 by over 200,000
proposed class members.  To calculate an
aggregated amount of class-wide damages on the alleged overpayment of ordinary
income taxes in 1988, appellants proposed using average tax rates derived from
statistical samples of taxpayers or, alternatively, a default fifteen percent
flat rate, multiplied by the average tax basis of the shares held by the class
members at the time of the special distribution.  The record shows, however, that whether BNSF=s alleged misreporting of the special distribution caused each of the
200,000-plus class members to suffer an injury is based on several
individualized factors, such as whether the shares were held by individuals
rather than domestic corporations, whether the shares were sold in 1988, and
the basis in the shares.  Appellants= expert testified that approximately fourteen percent of the shares
held by individual shareholders were either sold in 1988, or had a basis under
$10.32, and that those shares suffered no injury as a result of the alleged
misreporting.  In addition, BNSF=s expert testified that domestic corporations could have benefitted
from an alleged reporting error because corporations are taxed at a lower rate
for dividends than for capital gains. 
Likewise, the evidence shows that the amount of taxes overpaid in 1988
by each injured class member will vary based on numerous highly individualized
factors, including (1) basic tax status, i.e., foreign or domestic corporation,
partnership, trust, estate, or individual, married, or single, etc.; (2) amount
of ordinary income for 1988 and associated marginal ordinary-income tax rate;
(3) deductions, credits, and exemptions for 1988; (4) number of shares of stock
held in 1988; (5) tax basis for each share; and (6) complete purchase and sale
information for the stock. 

In light of these highly
individualized factors, utilization of an aggregated damages model would
require BNSF to prove that some class members were not damaged at all by the
alleged misreporting and that other class members= damages were less than those calculated by the model, thus shifting
the burden of proof to BNSF.  Because
class action devices may not be used to alter a party=s burden of proof,[37]
the trial court did not abuse its discretion in refusing to allow appellants to
use their aggregated damages model to satisfy the predominance requirement.[38]








For all of these reasons, we
hold that the trial court did not abuse its discretion by rejecting appellants= proposal to employ an aggregated damages model to determine
class-wide damages.  Accordingly, we
overrule appellants= third and
fifth issues.[39]

                                         VIII.  Conclusion

Having disposed of all of
appellants= issues, we
affirm the trial court=s order
denying class certification.

 

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL A:   CAYCE,
C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED: 
August 24, 2006











[1]Fuller
v. State Farm County Mut. Ins. Co., 156 S.W.3d 658, 660 (Tex.
App.CFort
Worth 2005, no pet.).





[2]Id.





[3]Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42
(Tex. 1985), cert. denied, 476 U.S. 1159 (1986).





[4]State
v. Sw. Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).





[5]Fuller, 156
S.W.3d at 660.





[6]Davis
v. Huey, 571 S.W.2d 859, 862 (Tex. 1978).





[7]Henry
Schein, Inc. v. Stromboe, 102 S.W.3d 675, 690 (Tex. 2002).





[8]Nat=l W.
Life Ins. Co. v. Rowe, 164 S.W.3d 389, 392 (Tex. 2005); see
Sw. Refining Co. v. Bernal, 22 S.W.3d 425, 435 (Tex. 2000) (A[A]ctual,
not presumed, conformance with [rule 42] remains . . . indispensable.@)
(quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160, 102 S.
Ct. 2364,  2372 (1982)).





[9]Vinson
v. Tex. Commerce Bank‑Houston, Nat=l Ass=n, 880
S.W.2d 820, 825 (Tex. App.CDallas 1994, no writ).





[10]Doran
v. ClubCorp USA, Inc., 174 S.W.3d 883, 888 (Tex. App.CDallas
2005, no pet.); Fuller, 156 S.W.3d at 660.





[11]Vinson, 880
S.W.2d at 824.





[12]Bernal, 22
S.W.3d at 433; Becton Dickinson & Co. v. Usrey, 57 S.W.3d 488, 493
(Tex. App.CFort
Worth 2001, no pet.).  Before the October
9, 2003 amendment to rule 42, rule 42(b) contained four subdivisions rather
than the current three.  Former
subparagraph (b)(3) of rule 42 was omitted as unnecessary, and former subparagraph
(b)(4) was renumbered as subparagraph (b)(3). 
Tex. R. Civ. P.
42.2(b)(3)-(4), 66 Tex. Bar J.
902 (1983, amended 2003).





[13]Tex. R. Civ. P. 42(b).





[14]Bernal, 22
S.W.3d at 433.





[15]Tex. R. Civ. P. 42(b)(3).





[16]Bernal, 22
S.W.3d at 434; accord Snyder Commc=ns, L.P. v. Magana, 142
S.W.3d 295, 300 (Tex. 2004) (holding that a court cannot certify a class under
rule 42 if the focus of the litigation will be mainly on individual issues,
despite the existence of some common questions of law or fact).





[17]Bernal, 22
S.W.3d at 434.





[18]Id. at
436 (citing Gen. Motors Corp. v. Bloyed, 916 S.W.2d 949, 959 (Tex.
1996)).





[19]In re
Tri-Star Pictures, Inc., Litigation, 634 A.2d 319, 334 & n.18
(Del. 1993) (breach of fiduciary duty), disapproved on other grounds, Tooley
v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004); USH
Ventures v. Global Telesys. Group, Inc., 796 A.2d 7, 23 (Del. Super. Ct.
2000) (breach of contract), aff=d, 781
A.2d 696 (Del. 2001).  No party has
complained about the trial court=s ruling that Delaware law
applies to the substantive issues in the case; therefore, we assume for
purposes of this opinion that it does.





[20]22 Am. Jur. 2d Damages '' 16,
18; see New Haverford P=ship v. Stroot, 772
A.2d 792, 798 (Del. 2001); Russell v. K-Mart Corp., 761 A.2d 1, 5 (Del.
2000); Duphily v. De. Elec. Co-op., Inc., 662 A.2d 821, 828 (Del. 1995)
(stating that, under Delaware law, damages are elements of both negligence and
negligence per se).





[21]Russell, 761
A.2d at 5; Duphily, 662 A.2d at 828.





[22]Tex. R. Civ. P. 42(b)(3).





[23]Bernal, 22
S.W.3d at 434; accord Snyder Commc=ns, 142
S.W.3d at 300.  Indeed, BNSF demonstrated
to the trial court that, if there were 104,000 class members, four individual
damages trials per day would take ninety-six years to complete, and eight
trials per day would take forty-eight years. 
The evidence shows that there are approximately 200,000 shareholders in
appellants=
proposed class. 





[24]Tex. R. Civ. P. 42(b)(3)(D).  We note that, even if certifying a nominal
damages class for the purpose of trying appellants=
breach of contract and breach of fiduciary claims were to make the case
manageable, appellants have not shown whether their willingness to forego
actual damages on these claims in exchange for nominal damages is typical of
the other 200,000 class members.  A[I]t
is not clear that a class action is superior [to other fair and efficient
methods for adjudicating the controversy], another predominance requirement . .
. , if it necessitates that plaintiffs give up substantial rights.@  Henry Schein, Inc., 102 S.W.3d at 695.





[25]Doran, 174
S.W.3d at 888; Fuller, 156 S.W.3d at 660.





[26]Tex. R. Civ. P. 42(d)(1) (emphasis
supplied).





[27]See Tex. Gov=t Code Ann. '
311.016(1) (Vernon 2005) (A>May=@
creates discretionary authority or grants permission or a power.@); Dallas
County Cm. Coll. Dist. v. Bolton, 185 S.W.3d 868, 873 (Tex. 2005) (noting
same).





[28]Bernal, 22
S.W.3d at 434-35 (rejecting the Acertify now and worry later@
approach); see Vinson, 880 S.W.2d at 825-26 (holding that the trial
court did not abuse its discretion by refusing to certify the class because,
even if the appellants prevailed on any one of the common issues of law, Athe
members of the class must do more than prove the amount of their individual
claims@).





[29]Bernal, 22
S.W.3d at 434; see Snyder Commc=ns, 142
S.W.3d at 300-01.





[30]Compaq
Computer Corp. v. Lapray, 135 S.W.3d 657, 671 (Tex. 2004).





[31]See,
e.g., Moody v. Nationwide Mut. Ins. Co., 549 A.2d 291, 293 (Del.
1988) (loss of future earnings); Henne v. Balick, 146 A.2d 394, 396
(Del. 1958) (same); Cura Fin. Servs N.V. v. Electronic Pmt. Exch., Inc.,
No. CIV. A. 18278, 2001 WL 1334188, at *19-20 (Del. Ch. Oct. 22, 2001) (future
lost profits); Red Sail Easter Ltd. Ptrs., L.P. v. Radio City Music Hall
Prods., No. CIV. A. 12036, 1992 WL 251380, at *7 (Del. Ch. Sept. 29, 1992)
(same); Tanner v. Exxon Corp., No. C.A. 79C-JA-5, 1981 WL 191389, at
*2-4 (Del. Super. Ct. July 23, 1981) (same); see also Eastman Kodak Co. of
N.Y. v. S. Photo Materials Co., 273 U.S. 359, 378-79, 47 S. Ct. 400, 405
(1927); R.M. Williams Co. v. Frabizzio, No.  C.A. 90C-MY-10, 1993 WL 54423, at *13 (Del.
Super. Ct. Feb. 8, 1993) (both stating that doubts about the extent of damages
are resolved against the wrongdoer, particularly if the defendant=s
actions make the precise calculation of damages impossible).





[32]Cf.
United States v. Fior D=Italia, Inc., 536
U.S. 238, 243, 122 S. Ct. 2117, 2122-23 (2002) (holding that the internal
revenue code authorized the IRS to use aggregate estimates of unreported
employee tips in calculating the tax assessment against such tips on the
employer=s
income).





[33]This
court did not, as appellants contend, Aimplicitly approve[] the use
of statistics in the class-action context@ in Samuelson v. United
Healthcare of Texas, Inc.  Rather, we
merely noted the testimony of appellees= expert witness that damages
could not be calculated on an aggregate, class-wide basis.  79 S.W.3d 706, 712 (Tex. App.CFort
Worth 2002, no pet.).





[34]See
Bernal, 22 S.W.3d at 437 (holding that the class action is a procedural
device that is Anot
meant to alter the parties= burdens of proof, right to a
jury trial, or the substantive prerequisites to recovery@ and
therefore is not a proper vehicle for trying claims whose outcome depends on
highly individualistic variables).





[35]Bomarko,
Inc. v. Int=l
Telecharge, Inc., 794 A.2d 1161, 1184 (Del. Ch. 1999) (stating
that Aa
wrong [must be] proven and injury established@), aff=d, 766
A.2d 437 (Del. 2000); Total Care Physicians, P.A. v. O=Hara, No.
C.A. 99C-11-201JRS, 2003 WL 21733023, at *3 (Del. Super. Ct. July 10, 2003) (AThe
court must first determine whether the plaintiff has proven that an injury or
damage occurred and then must determine whether the plaintiff has adequately
proven the amount of his damages.@), appeal ref=d, 846
A.2d 239 (Del. 2003); see Russell, 761 A.2d at 5; Duphily, 662
A.2d at 828  (both holding that, in order
to prevail in a negligence action in Delaware, the plaintiff must prove both
causation and injury).  Although nominal
damages may be presumed in some breach of contract and intentional tort cases
if the fact of injury is established, as we have discussed in section V, there
is no presumption of damages in negligence cases.





[36]See
Capital One Bank v. Rollins, 106 S.W.3d 286, 297 &
n.6 (Tex. App.CHouston
[1st Dist.] 2003, no pet.) (holding that class representatives had not
demonstrated that statistical evidence based on the defendant=s
computer records and other factors could overcome the need for individualized
proof regarding whether the defendant had failed to properly credit individual
class members=
credit card payments); Wal-Mart Stores, Inc. v. Lopez, 93 S.W.3d 548,
560-61 (Tex. App.CHouston
[14th Dist.] 2002, no pet.) (holding, in a suit for wrongful denial of breaks
and pay for off-the-clock work, that statistical evidence could not be used to
prove that many breaks were missed by individual class members, to provide an
estimate of the total amount of missed break time, and to determine the average
number of off-the-clock hours per week for each class member); accord In re
Fibreboard Corp., 893 F.2d 706, 709, 711 (5th Cir. 1990) (holding that,
because Texas substantive law requires individual plaintiffs to prove both
causation and damages, liability and damages issues in asbestos litigation
involving over 3000 class members could not be determined based on
representative trials for only 11 sample plaintiffs, coupled with expert
testimony based on math models to extrapolate the class members=
total damages).





[37]Bernal, 23
S.W.3d at 437.





[38]Appellants=
reliance on Dallas County Community College Dist. v. Bolton is
misplaced.  Bolton does not discuss
the propriety of using aggregated damages models to satisfy the predominance
requirement in class certification cases. 
89 S.W.3d 707, 722 (Tex. App.CDallas 2002), rev=d, 185
S.W.3d 868, 870 (Tex. 2005). 





[39]In
light of our disposition of appellants= first, second, third, and
fifth issues, we need not consider appellants=
fourth issue, in which they complain that the trial court improperly determined
that damages had to be offset by future tax benefits, nor is it necessary for
us to reach BNSF=s
cross-appeal.  See Tex. R. App. P. 47.1 (providing that
court of appeals need address only issues raised that are necessary to the
final disposition of the appeal).