

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00090-CV

———————————————————

GOVERNMENT PERSONNEL MUTUAL LIFE INSURANCE COMPANY,
Appellant

V.

LINCOLN FACTORING, Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-316810-20

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellee Lincoln Factoring, LLC sued Appellant Government Personnel Mutual Life Insurance Company (GPM) for failing to timely pay on a life-insurance policy. The trial court, applying Louisiana law, found that GPM's untimeliness violated statutory duties and awarded Lincoln damages. We hold that Texas law applies. Consistent with Texas law, we will (1) reverse in full, (2) dismiss Lincoln's statutory claim as the beneficiaries' assignee under Chapter 542 of the Texas Insurance Code due to Lincoln's lack of standing, and (3) remand for a new trial on Lincoln's remaining claims under Texas substantive law.

## I. Background

GPM—a corporation with its home office in Texas—provided a $15,000 life-insurance policy (the Policy) to Louisiana resident Ollie Hudson (Decedent). The Policy stated that "[a]ll settlements are payable by Us [i.e., GPM] at Our Home Office," with "Home Office" defined as "[t]he main office of GPM in San Antonio, Texas."

Decedent died in Louisiana in late October 2019. To cover Decedent's funeral expenses, all seven of her life-insurance beneficiaries (the Decedent's seven children) assigned their rights to the Policy proceeds to the Louisiana funeral home. The funeral home, in turn, assigned the Policy proceeds to Lincoln—a corporation doing business in Texas. The assignments conveyed the rights to the Policy proceeds "up to and including $11,047.30," which was the cost of the funeral plus Lincoln's fee. The beneficiaries also assigned "all of their claims and causes of action connected with the

2

Policy," and they signed limited powers of attorney designating Lincoln as their agent for purposes of the Policy. All of this took place within two weeks of Decedent's death.

In early November—on the same day that Lincoln paid the funeral home—Lincoln notified GPM of the beneficiaries' assignments by sending a fax from its Fort Worth office to GPM's San Antonio headquarters. Lincoln also mailed GPM a letter—sent from its Fort Worth office to GPM's San Antonio headquarters—which provided GPM with additional paperwork and which requested payment on the Policy. The letter specified Lincoln's Fort Worth office as the appropriate payee.

Later that month, Lincoln sent another letter from its Fort Worth office to GPM's San Antonio headquarters, again requesting payment and naming its Fort Worth office as the payee. In like fashion, Lincoln sent another letter from its Fort Worth office to GPM's San Antonio headquarters in January 2020, again listing Lincoln's Fort Worth office as the appropriate payee. And it followed up again in March 2020, triggering a responsive fax from GPM that was sent from GPM's San Antonio headquarters to Lincoln's Fort Worth office.

By May 2020, when GPM still had not paid on the Policy, Lincoln filed suit in Tarrant County as the beneficiaries' assignee and attorney-in-fact. Lincoln ultimately narrowed its causes of action to (1) breach of contract, (2) if Louisiana law governed the case, violations of Section 22:1973 and 22:1811 of the Louisiana Insurance Code and (3) if Texas law governed the case, common law bad faith and violations of

Chapters 541 and 542 of the Texas Insurance Code. The trial court resolved the choice-of-law issue pretrial by ruling that Louisiana law would govern the case.[1]

While Lincoln's suit was pending, in December 2020, GPM paid Policy proceeds of $11,047.30 to Lincoln, sending a letter and check from GPM's San Antonio headquarters to Lincoln's Fort Worth office. GPM also paid $100.24 to each of the beneficiaries who had filed the relevant claimant paperwork.[2]

Lincoln proceeded to a bench trial on its Louisiana statutory claims,[3] and the trial court found in Lincoln's favor. It concluded that GPM violated its statutory duty under Section 22:1973 of the Louisiana Insurance Code by unreasonably "withh[o]ld[ing] the Policy benefit on three separate occasions in November of 2019, January of 2020[,] and

---

[1]The trial court referenced its pretrial ruling on the choice-of-law issue in its subsequent findings of fact and conclusions of law. The findings and conclusions indicate that the pretrial choice-of-law ruling came as part of the trial court's denial of GPM's summary judgment and plea in abatement. But the record does not contain an order denying either the summary judgment motion or the plea in abatement.

[2]Decedent had taken out a loan against the cash value of her Policy, and the loan was outstanding when she died. The value of the loan was deducted from the face value of her Policy, leaving approximately $12,000 remaining for her beneficiaries, out of which $11,047.30 was consumed by the cost of the funeral and Lincoln's fee. The beneficiaries have not complained about any failure to pay the remaining amount.

[3]The record and briefing indicate that Lincoln abandoned its breach of contract claim before trial. Lincoln acknowledges that it proceeded to trial only "on its claims under Louisiana law for breach of the duty of good faith and fair dealing, and unjustified delay in payment of insurance proceeds." And although Lincoln insists that the trial court found that there was a breach of the Policy, it does so only in the context of supporting its statutory claim under the Louisiana Insurance Code.

4

the summer of 2020 for over 60 days after receiving satisfactory proof of loss." Although the court gave GPM a credit for the $11,047.30 it had already paid to Lincoln, the court awarded Lincoln $10,605.41 in actual damages for the cost Lincoln had paid for Decedent's funeral, $21,210.82 in penal damages (two times Lincoln's actual damages), plus an additional $35,000 in penal damages ($5,000 for each of the seven beneficiaries), all under Section 22:1973 of the Louisiana Insurance Code. La. Stat. Ann. § 22:1973 (2022). And the trial court awarded 8% penal interest totaling $939.84 under Section 22:1811 of the Louisiana Insurance Code. *Id.* § 22:1811.

GPM appeals, raising ten issues. But this appeal turns on just two of those issues: choice of law and subject matter jurisdiction.[4]

---

[4]Lincoln argues that GPM waived the choice of law issue by submitting, in its proposed findings of fact and conclusions of law, a proposed conclusion that "Louisiana law applies to the enforcement of the Policy." *See Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 473 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("Choice of law issues can be waived if not properly invoked."). But at the time Lincoln submitted its proposed findings, the trial court had already addressed the choice-of-law issue in its denial of GPM's summary judgment motion and plea in abatement, and the trial court had held that Louisiana law would apply. *Cf. Uro-Tech, Ltd. v. Somerset Partners, Corp.*, No. 05-96-01455-CV, 1999 WL 153130, at *2 (Tex. App.—Dallas Mar. 23, 1999, no pet.) (not designated for publication) ("Generally, there is no need to preserve error on the partial summary judgment ruling."). Moreover, Lincoln raises its waiver argument in just three sentences of its brief with no citations to case law or other authority. *Cf.* Tex. R. App. P. 38.1(i), 38.2(a)(1).

## II. Choice of Law

Lincoln pleaded different claims under Texas law than it did under Louisiana law.[5] So before we can address the court's "power to hear [this] particular type of suit"—its subject matter jurisdiction—we must first determine which state's law governs. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016) (describing subject matter jurisdiction).

### A. Standard: The Most-Significant-Relationship Test

"Which state's law governs an issue is a question of law for the court to decide." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). To answer this question, Texas courts apply the Restatement's "most significant relationship" test.[6] Restatement (Second) of Conflict of Laws §§ 6, 145(1), (Am. Law Inst. 1971); *see Torrington*, 46 S.W.3d at 848. The test examines which state's law has the most significant relationship to a particular substantive issue by balancing the needs of the interstate systems; the policies of the forum and of other interested states; the relative interests of other states in the determination of the particular issue; the protection of justified expectations; the basic

---

[5]It is undisputed that the two states' laws differ; in fact, Lincoln's pleaded causes of action differ based on which state's law applies. *Cf. Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 712 (Tex. App.—Fort Worth 2003, no pet.) (declining to undertake choice-of-law analysis because the outcome "under any of the[] three states' laws would be the same on the issues relevant to th[e] appeal").

[6]The determination is governed by the choice-of-law principles of the forum. *Cook v. Frazier*, 765 S.W.2d 546, 549 (Tex. App.—Fort Worth 1989, no writ).

policies underlying the particular field of law; the certainty, predictability, and uniformity of result; and the ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6(2) (Am. Law Inst. 1971); *see Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205–06 (Tex. 2000); *Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (Tex. 1979) (noting that "Section 6 sets out the general principles by which the more specific rules [such as those in Section 145] are to be applied"). For tort claims—such as Lincoln's statutory claims and common law bad faith claim[7]—these general choice-of-law principles are articulated and applied with reference to four primary considerations: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."[8]

---

[7]Both GPM and Lincoln recite and rely upon the tort-specific most-significant-relationship test, indicating their agreement that all of Lincoln's asserted claims sound in tort. We agree. "Chapter 541 claims and claims for breach of the duty of good faith and fair dealing are tort claims that are independent from a claim for breach of an insurance contract." *Old Am. Ins. Co. v. Lincoln Factoring, LLC*, 571 S.W.3d 271, 277 (Tex. App.—Fort Worth 2018, no pet.); *see USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018) (similar). And the Supreme Court of Louisiana has implied that it considers third-party Section 22:1973 claims against an insurer to be tort claims as well. *See Smith v. Citadel Ins. Co.*, 2019-00052, pp. 8–15 (La. 10/22/19); 285 So. 3d 1062, 1071 (discussing case law that distinguished between first-party and third-party Section 22:1973 claims, "endors[ing] this jurisprudence," and holding that first-party Section 22:1973 claims are considered contract claims).

[8]The test differs slightly for contract claims. For those, we consider "(a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the location of the contract's subject matter; and (e) the parties' domicile, residence,

Restatement (Second) of Conflict of Laws § 145(2) (Am. Law Inst. 1971); *see Torrington*, 46 S.W.3d at 848; *Hughes Wood Prods.*, 18 S.W.3d at 206 & n.2 (holding that court must apply issue-specific Restatement test and noting that the issue-specific test "articulates and applies the [general choice-of-law] principles of section 6"). These four, tort-specific considerations are nonexhaustive and must be evaluated "according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971).

## B. Application: Texas's Relationship and Louisiana's Relationship

The parties dispute whether Texas or Louisiana has the most significant relationship to the case. *See id.* Lincoln argues that Louisiana has the most significant relationship because Decedent bought the Policy in Louisiana, the Policy was approved by the Louisiana Department of Insurance, Decedent and six of her seven beneficiaries lived in Louisiana, the funeral that the Policy was intended to pay for occurred in Louisiana, and the assignments were entered into in Louisiana. GPM counters that Texas law governs because the single issue that Lincoln's suit complains of is GPM's

---

nationality, place of incorporation, and place of business." *Minn. Min. & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735–36 (Tex. 1997) (quoting Restatement (Second) of Conflict of Laws § 188(2) (Am. Law Inst. 1971)). And when the contract at issue is for life insurance, the location "where the performance either has taken, or is to take place" is the dominant factor for "questions involving details of performance." Restatement (Second) of Conflict of Laws §§ 192 cmt. a, 206 (Am. Law Inst. 1971); *see Nat'l W. Life Ins. Co. v. Rowe*, 164 S.W.3d 389, 392–92 (Tex. 2005) (quoting Restatement (Second) of Conflict of Laws § 192 (Am. Law Inst. 1971)). Regardless, Lincoln did not proceed to trial on its breach of contract claim.

delay in its payment of the Policy proceeds, and every payment-related event or communication occurred in Texas between the two Texas entities. We agree with GPM.

The question is not which state has the most significant relationship to the parties generally or to Decedent's life-insurance Policy overall; the Restatement "requires the court to consider which state's law has the most significant relationship *to the particular substantive issue to be resolved.*" *Hughes Wood Prods.*, 18 S.W.3d at 205 (emphasis in original). Lincoln pleaded that GPM's delayed payment of the Policy proceeds was a breach of its Texas common law duty of good faith and a violation of its statutory duties under Texas's and Louisiana's Insurance Codes. Thus, the "particular substantive issue" raised by Lincoln's claims is whether GPM tortiously breached its common law and statutory duties by delaying payment. Texas has the most significant relationship to this issue—Texas is "the place where the injury[, if any,] occurred," it is the "place where the conduct causing the injury occurred," it is "the place of business of the parties," and it is "the place where the relationship . . . between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2) (Am. Law Inst. 1971); *see Torrington*, 46 S.W.3d at 848.

## 1. Texas is the "place where the injury[, if any,] occurred."

To the extent that Lincoln alleged an actual injury from GPM's tortious delay, Texas is the place of that injury. *See* Restatement (Second) of Conflict of Laws § 145(2)(a) (Am. Law Inst. 1971). But the existence of an actual injury is not clear.

9

For Lincoln's Louisiana statutory claims, Lincoln sought, and the trial court awarded, "actual damages" equal to the price Lincoln had paid for Decedent's funeral: $10,605.41. At the time of trial, though, GPM had already paid Policy proceeds in excess of that amount, and the trial court effectively acknowledged as much by giving GPM a credit for its $11,047.30 payment—a payment that covered Decedent's funeral expenses and Lincoln's fee. So in reality, there were no unpaid "actual damages" identified or awarded.[9] And the only other damages Lincoln sought or received on its Louisiana statutory claims were penal.

As for GPM's delayed payments of $100.24 to each of the beneficiaries, these payments were not mentioned in Lincoln's live petition, and there was no allegation or evidence that the delay of these payments caused any injury distinct from the payments themselves. The trial court implicitly found as much; in its findings and conclusions, the trial court stated that each beneficiary "ha[d] a right to be awarded $5,000 [in

---

[9]To support its Louisiana statutory claims, Lincoln argues that Louisiana case law allows already-paid life-insurance proceeds to serve as "actual damages" for purposes of calculating penal damages under the Louisiana Insurance Code. The case law it relies upon is not on-point, though. *See La. Bag Co. v. Audubon Indem. Co.*, 2008-0453, p. 1 (La. 12/2/08); 999 So. 2d 1104, 1106–07 (reviewing statutory claim under former § 22:658 and analyzing not whether already-paid funds remained actual, live damages, but "whether an insurer, who fails to tender the undisputed portions of a claim within the thirty-day time period provided by La. R.S. § 22:658, has acted in a manner that is arbitrary, capricious or without probable cause").

statutory penal damages] *if no damages ha[d] been proven*," then it awarded Lincoln $5,000 for each of the seven beneficiaries.[10] [Emphasis added.]

Lincoln's pleadings under Texas law were equally ambiguous as to its actual injury. Other than the already-paid Policy proceeds, Lincoln's Texas statutory claims sought penal damages—not compensatory damages. And while Lincoln's claim for common law bad faith alleged an injury separate from the Policy proceeds—that "[Lincoln] and the beneficiaries [we]re damaged due to the funeral bill being a liability for the beneficiaries as a result of the delay /denial of the Policy benefits"—Lincoln's own evidence contradicted this allegation. Lincoln's evidence demonstrated that Lincoln had paid for the funeral within two weeks of Decedent's death and before GPM's payment obligation had been triggered. This evidence was uncontroverted. Consequently, the funeral bill was not a "liability for the beneficiaries" during GPM's subsequent period of delay. It was Lincoln—not the beneficiaries—that ultimately floated the cost of the funeral while GPM delayed payment. And Lincoln neither pleaded nor offered evidence to show that floating the cost of the funeral bill during GPM's period of delay was a liability for the company or that such liability caused the company an actual injury separate and apart from the amount of the funeral bill itself.

---

[10]The relevant portion of Louisiana's Insurance Code actually authorizes penal damages "in an amount not to exceed two times the damages sustained or five thousand dollars, *whichever is greater.*" La Stat. Ann. § 22:1973(C) (emphasis added).

11

But even if Lincoln's already-compensated payment of the funeral bill constituted an actual, live injury (as the trial court found), and even if Lincoln's floating of the cost of the funeral bill for an extended period of time caused Lincoln unspecified financial injury apart from the cost of the funeral, to the extent that such amorphous financial injuries could be said to have occurred at a particular "place," the financial injuries occurred at the payee's place of business: Texas.[11] Restatement (Second) of

---

[11]Lincoln neither alleged nor offered evidence that it felt the financial injury outside of Texas. To the contrary, in Lincoln's original, first amended, and second amended petitions, it justified its selection of Tarrant County as the appropriate venue by stating that "the loss of $11,047 occurred in Tarrant County, Texas." Lincoln removed this statement from its third amended petition, though, and its third amended petition superseded its previous petitions and was Lincoln's live pleading at the time of trial. Therefore, we do not consider Lincoln's superseded pleadings in our choice-of-law analysis. "[A]lthough superseded pleadings are admissible at trial in some circumstances," they were not offered into evidence in this case, and "they are not binding on [Lincoln] as formal judicial admissions." *Sanders v. Future Com, Ltd.*, No. 02-15-00077-CV, 2017 WL 2180706, at *6 (Tex. App.—Fort Worth May 18, 2017, no pet.) (mem. op.) (holding that statements in superseded petition were not judicial admissions); *see* Tex. R. Civ. P. 65 (providing that when a substituted instrument is filed, unless certain exceptions apply, "the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause"); *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 839 (Tex. 2022) (reiterating that "allegations contained in a pleading that is superseded by an amended pleading are not conclusive and indisputable judicial admissions" (internal quotation marks omitted)); *cf. Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (noting that statements in superseded pleadings "are considered admissions by a party–opponent and are not hearsay" when offered into evidence); *Wells Fargo, N.A. v. Clower*, No. 02-20-00058-CV, 2021 WL 4205056, at *6 n.12 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op.) (noting that a "superseded pleading can still be regarded as part of the case if someone has complained about 'some error of the court in deciding upon the necessity of the amendment, or otherwise in superseding it,' and 'exception be taken to the action of the court, or [if] it be necessary to look to the superseded pleading upon a question of limitation'" (quoting Tex. R. Civ. P. 65)); *Beving v. Beadles*, 563 S.W.3d 399, 407 n.6 (Tex. App.—Fort Worth 2018, pet. denied) (leaving open the question of

Conflict of Laws § 145 cmt. f (Am. Law Inst. 1971) (explaining that financial losses, such as those resulting from lost trade due to false advertising, "will normally be felt most severely at the plaintiff's headquarters or principal place of business"); *see Alarcon v. Velazquez*, 552 S.W.3d 354, 362 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citing Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971), and concluding that "[a]ny injury [the plaintiffs] suffered as a result of [the defendant's] alleged conversion and theft of the [jointly owned] corporations' assets would have been suffered in Mexico" where the plaintiffs resided).[12]  Therefore, Lincoln's actual injury, if any, occurred in Texas.

### 2.  Texas is the "place where the conduct causing the injury occurred."

The "place where the conduct causing the injury occurred" is much more straightforward:  *See* Restatement (Second) of Conflict of Laws § 145(2)(b) (Am. Law Inst. 1971).  All of GPM's allegedly injurious conduct occurred in Texas.  The trial court

---

"whether a trial court and reviewing court could consider factual allegations in a superseded pleading" when ruling on or reviewing a ruling on a motion to dismiss under the Texas Citizens Participation Act).

[12]*But cf. EA Oil Serv., Inc. v. Mobil Expl. & Producing Turkm., Inc.*, No. 14-99-00706-CV, 2000 WL 552406, at *2 (Tex. App.—Houston [14th Dist.] May 4, 2000, no pet.) (not designated for publication) (applying Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971), and holding that injury from tortious interference with contracts between a Texas-based company and the Turkmen government regarding the repair of oil wells located in Turkmenistan occurred "where [the] contracts were lost"—in Turkmenistan—"even though its effects were also felt by [the company's] Texas headquarters").

found that GPM violated its statutory duty under Louisiana law by unreasonably "withh[o]ld[ing] the Policy benefit on three separate occasions in November of 2019, January of 2020[,] and the summer of 2020 for over 60 days after receiving satisfactory proof of loss." The "satisfactory proof of loss" that GPM received from Lincoln— notifying GPM of Decedent's death, providing copies of the assignments, and repeatedly demanding payment—was sent from Lincoln's Texas office to GPM's Texas headquarters. And the performance Lincoln requested from GPM was located in Texas as well; under the express terms of the Policy, the life-insurance benefits were "payable by [GPM] at [its] Home Office," i.e., "[t]he main office of GPM in San Antonio, Texas." So when GPM withheld the Policy proceeds in November 2019, January 2020, and summer 2020, it did so from its Texas headquarters. And when GPM ultimately paid Lincoln the Policy proceeds in December 2020, it did so from its Texas headquarters.

Texas's relationship to the conduct causing the injury is all the more important given the policy interests underlying Lincoln's claims. Restatement (Second) of Conflict of Laws § 6(2)(e) (Am. Law Inst. 1971) (listing as relevant choice-of-law consideration the basic policies underlying the particular field of law). Lincoln sought and obtained punitive damages—damages intended to punish GPM rather than compensate Lincoln. And the statutory provisions Lincoln relied upon had such punitive effects in mind.

The Texas Legislature enacted Chapter 542 of the Texas Insurance Code "to promote the prompt payment of insurance claims" by insurers. Tex. Ins. Code Ann. § 542.054. And it enacted Chapter 541 to "regulate" insurers by "defining . . . unfair

14

methods of competition or unfair or deceptive acts or practices" and "prohibiting those trade practices." *Id.* § 541.001 (stating legislative purpose). The focus of these statutes is to keep insurers in line. And the statutes' punitive nature is revealed not only by the punitive damages they authorize for private parties—interest "at the rate of 18 percent a year" under Chapter 542 and up to "three times the amount of actual damages" under Chapter 541—but also by the enforcement mechanisms they provide for the attorney general—allowing the attorney general to request civil penalties for violations of Chapter 541. *See id.* §§ 541.152 (authorizing punitive damages in private actions if the defendant "knowingly committed the act complained of"), 541.204 (authorizing attorney general to "request a civil penalty of not more than $10,000 for each violation" of Chapter 541), 542.060(a) (authorizing 18 percent interest).

The statutes that Lincoln invokes under the Louisiana Insurance Code are designed for a similar regulatory and punitive effect. There, too, the state legislature focuses on keeping insurers in line, *see* La. Stat. Ann. § 22:1961 (2022) (stating intention to "regulate" insurers' trade practices by "defining . . . all acts, methods, and practices which constitute unfair methods of competition and unfair or deceptive acts and practices in this state, and . . . prohibit[ing] the same"), and the legislature authorizes punitive damages for insurers who violate their statutory duties, *see id.* § 22:1973(C) (authorizing penal damages "in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater" for private parties suing insurers). In fact, Section 22:1811 of the Louisiana Insurance Code—under which

15

Lincoln was awarded 8 percent interest—is titled "payment of claims; life policies; *penalty*." *Id.* § 22:1811 (emphasis added and capitalization altered).

Because Texas's and Louisiana's statutory punitive damages are intended to deter and punish an insurer's deviation from the state's standard of care, the "place where the [punishable] conduct" occurred is all the more significant in the choice-of-law analysis. Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971) (stating that "contacts are to be evaluated according to their relative importance with respect to the particular issue"); *see Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 291 (Tex. App.—Beaumont 2019, no pet.) (holding that Mexican law governed punitive damages issue because (1) "[u]nlike compensatory damages, which attempt to make a plaintiff whole, punitive damages are meant to punish and deter a defendant for conduct deemed egregious" and (2) "[t]o impose damages meant to punish a party based on standards of care in Texas, when neither the conduct giving rise to the injury nor the injury itself arose in Texas defies logic"); *cf. Torrington*, 46 S.W.3d at 849 (noting that, given the purpose of compensatory damages, "the most important contacts [in a compensatory-damages case] . . . will usually be the ones with the most direct interest in the plaintiff's monetary recovery and/or . . . in protecting the defendant against financial hardship" (internal quotation marks omitted)).

### 3. Texas is the "place of business of the parties"

Texas is also the parties' "place of business." Restatement (Second) of Conflict of Laws § 145(2)(c) (Am. Law Inst. 1971); *see also id.* cmt. e (noting that when the interest

16

affected is a business or financial one, the place of business is more important than the domicile). The two parties here are GPM and Lincoln.[13] GPM's headquarters is in Texas, and both it and Lincoln conduct business here.[14] *See* Restatement (Second) of

---

[13]Although Lincoln filed suit as the beneficiaries' assignee and agent, it does not argue that these roles alter the Restatement analysis; both it and GPM assume that they are the two "parties" for purposes of Section 145.

Indeed, the beneficiaries' involvement in this lawsuit was in name only; none of the beneficiaries filed pleadings and none of them appeared or testified at trial. GPM's alleged conduct—its bad-faith delay in payment—occurred after the beneficiaries had already assigned their rights to Lincoln, and after Lincoln had already paid for Decedent's funeral. It was Lincoln who bore the cost of the funeral, Lincoln who pressured GPM for timely payment, Lincoln who filed suit, and Lincoln who collected damages. And all of Lincoln's actions—authorizing payment for the funeral, pressuring GPM, filing suit, and collecting damages—occurred in Texas. In the circumstances of this case then, Lincoln is the relevant "party" for purposes of the most-significant-relationship analysis. *Cf. Allenby, LLC v. Credit Suisse AG, Cayman Islands Branch*, No. 05-16-00253-CV, 2017 WL 3276001, at *8 (Tex. App.—Dallas Aug. 1, 2017, no pet.) (mem. op.) (applying most-significant-relationship test in contract case and considering domicile of party–assignees rather than non-party–assignors). *But cf. RMS Software Dev., Inc. v. LCS, Inc.*, No. 01-96-00824-CV, 1998 WL 74245, at *3 (Tex. App.—Houston [1st Dist.] Feb. 19, 1998, no pet.) (not designated for publication) (applying most-significant-relationship test in misappropriation of trade secrets case; noting the places of incorporation for appellant–assignee, appellant's assignor, appellee–successor, and appellee's predecessor; but downplaying relevance of appellant–assignee's domicile because it "[wa]s only a party to this lawsuit as an assignee" and "[n]one of the actions of [the assignee we]re relevant to th[e] lawsuit; [the assignee] merely stepped into the shoes of [the assignor]" after the injury had occurred).

[14]In Lincoln's original, first amended, and second amended petitions, it alleged that its corporate headquarters was in Texas. Lincoln removed this statement from its live, third amended petition, though, so we do not consider it in our choice-of-law analysis. *See* Tex. R. Civ. P. 65; *Lake Jackson Med. Spa,*, 640 S.W.3d at 839; *Sanders*, 2017 WL 2180706, at *6; *supra* note 11.

17

Conflict of Laws § 145(2)(c) (Am. Law Inst. 1971). As with the other factors, this factor points to Texas as the state with the most significant relationship to the parties' dispute.

**4. Texas is "the place where the relationship . . . between the parties is centered."**

Finally, the parties' relationship is centered in Texas. *See id.* § 145(2)(d). The "particular substantive issue" raised by Lincoln's claims is whether GPM tortiously breached its common law and statutory duties by delaying payment, and all of the delay-related Policy communications between GPM and Lincoln occurred in Texas between the entities' Texas offices.[15] Lincoln repeatedly sent GPM faxes and letters from its Fort Worth office, and those communications were addressed and (presumably) delivered to GPM's San Antonio headquarters. When GPM faxed its response to Lincoln's communications, it did so from its San Antonio headquarters, and when it ultimately paid Lincoln the $11,047.30 in Policy proceeds, it did so from its San Antonio headquarters. Those proceeds were mailed to Lincoln's Fort Worth office, just as Lincoln had requested. Thus, the parties' relationship surrounding the delay-based

---

[15]Although Lincoln emphasizes that Decedent's Policy bore a stamp from the Louisiana Department of Insurance, Lincoln abandoned its contract claim and proceeded only on its claims for breaches of GPM's common law and statutory duties. Moreover, a Texas company provided the Policy. On balance, whatever weight the Louisiana Department of Insurance's imprimatur provides is slight.

18

substantive issue underlying Lincoln's claims was a relationship centered in Texas.[16] *See*

*id.*

## C. Conclusion:  Texas's Most Significant Relationship

At the end of the day, we come back to the question of "which state's law has

the most significant relationship *to the particular substantive issue to be resolved*." *Hughes Wood*

*Prods.*, 18 S.W.3d at 205 (stating that court of appeals erred by failing to apply most-

significant-relationship test  to the specific issue to be resolved—there, the exclusive-

remedy issue).  The particular substantive issue to be resolved is whether GPM's delayed

payment of the Policy proceeds to Lincoln violated GPM's common law and statutory

duties.  This delay occurred in Texas, both parties do business in Texas, and the Policy

proceeds were expected to be—and ultimately were—paid from Texas.   Lincoln

tellingly chose to file suit in Texas, and Texas has expended and will expend judicial

resources to resolve Lincoln's substantive delay-related issue.[17]   *See* Restatement

(Second) of Conflict of Laws § 6(2) (Am. Law Inst. 1971).

---

[16]In Lincoln's original, first amended, and second amended petitions, it advanced similar logic to justify its selection of Tarrant County as the appropriate venue: "Plaintiff verified with Defendant the insurance coverage, [and it] approved & paid the funeral home while in Tarrant County, Texas *which is a majority of the incidents that make up the claim against Defendant.*"   [Emphasis added and internal citations omitted.]   But Lincoln removed this statement from its live, third amended petition, so we do not consider it in our choice-of-law analysis.  *See* Tex. R. Civ. P. 65; *Lake Jackson Med. Spa,*, 640 S.W.3d at 839; *Sanders*, 2017 WL 2180706, at *6; *supra* note 11.

[17]Explaining its venue choice, Lincoln noted that "[t]he beneficiaries, assignors[,] and funeral home agreed to jurisdiction in Tarrant County, Texas."   Indeed, in the assignment forms Lincoln provided to the beneficiaries, it included a provision that

Although Louisiana has an interest in protecting its insured residents from disreputable insurance practices, *see* La. Stat. Ann. § 22:1961 (2022), Texas has an interest in ensuring that Texas insurance companies refrain from disreputable business practices and timely pay valid claims, *see* Tex. Ins. Code Ann. §§ 541.001, 542.054. *See also* Restatement (Second) of Conflict of Laws § 6(2)(b), (c) (Am. Law Inst. 1971) (listing as relevant choice-of-law considerations the relevant policies of the forum and those of other states). The damages Lincoln sought and obtained were penal in nature and were designed to punish the Texas tortfeasor. Restatement (Second) of Conflict of Laws § 6(2)(e) (Am. Law Inst. 1971) (listing as relevant choice-of-law consideration the basic policies underlying the particular field of law).

Taking all of these considerations together, Texas is the state with the most significant relationship to the present dispute, and Texas law governs Lincoln's common law and statutory tort claims. *See Torrington*, 46 S.W.3d at 848; Restatement (Second) of Conflict of Laws §§ 6, 145 (Am. Law Inst. 1971). Because the trial court failed to apply Texas law, we reverse its judgment.

### III. Subject Matter Jurisdiction

But that is not the end of the matter. Assuming that Texas law applies, as we have just held, GPM also challenges Lincoln's standing to assert its Texas claims. And

---

required assignment-related disputes to be litigated in Tarrant County. But the assignments are not at the center of the parties' dispute, and as Lincoln accurately notes, forum-selection clauses do not dictate the governing law.

20

because this attack goes to the court's subject matter jurisdiction, it can be raised at any time. *See Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 331 (Tex. 2020); *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 751 (Tex. 2017); *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008). A challenge to subject matter jurisdiction is a legal question, so our review here is de novo. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

"Standing is a constitutional prerequisite to suit." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). The standing inquiry "focuses on the question of who may bring an action" and "involves a threshold determination of whether a plaintiff has a sufficient 'justiciable interest' in the suit's outcome to be entitled to a judicial determination." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018); *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015) (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)); *see Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005). "'Without standing, a court lacks subject matter jurisdiction' over the case, and the merits of the plaintiff's claims thus cannot be litigated or decided." *H.S.*, 550 S.W.3d at 155 (quoting *Austin Nursing Ctr.*, 171 S.W.3d at 849).

In its brief, GPM broadly asserts lack of standing but limits its analysis and citation to authorities to just one cause of action: Lincoln's standing to sue under the

Chapter 542 prompt-payment statute as the beneficiaries' assignee.[18]  *See* Tex. Ins. Code

Ann. §§ 542.058(a), .060(a).  GPM alleges that Lincoln lacks standing to bring this claim

and cannot recover under Section 542.060 of the Texas Insurance Code.  *See id.*

§ 542.060.  And as GPM notes, Lincoln has already lost on this issue in *Old American*

*Insurance Co. v. Lincoln Factoring, LLC*—a case involving many of the same causes of

action, and a case in which Lincoln similarly acted as assignee of the relevant life-

insurance beneficiaries.  571 S.W.3d at 281–82.

In *Old American Insurance Co.*, Lincoln alleged that the life insurer delayed the

payment of benefits in bad faith, and it sought damages for breach of the common law

duty of good faith and fair dealing and for violations of Chapters 541 and 542 of the

Insurance Code, among other claims.[19]  *Id.* at 276.  Applying the plain language of

Chapter 542—specifically, the statutory definition of a "claim" applicable throughout

the prompt-payment subchapter, and the liability for a "claim" imposed under Section

542.060—we held that, as an assignee, Lincoln was "not the insured, policyholder, or

---

[18]Apart from its discussion of *Old American Insurance Co.*, GPM provides no other explanation of why Lincoln lacks standing to assert any of its Texas claims.

[19]In *Old American Insurance Co.*, Lincoln's claims for common law bad faith and violations of Chapter 541 failed as a matter of law because "the record d[id] not contain any allegation or proof that Lincoln Factoring suffered an injury that was independent of the benefits it sought under the policy."  *Old Am. Ins. Co.*, 571 S.W.3d at 278–79. GPM argues that the same is true here.  While it is true that the existence of an actual injury is ambiguous at best, Lincoln has not had an opportunity to offer evidence of any actual injuries stemming from its Texas claims.  Because the trial court resolved the choice-of-law issue pretrial, Lincoln only offered evidence on its Louisiana claims.

beneficiary named in the policy or contract . . . [and] d[id] not have standing to assert prompt payment claims" under Chapter 542. *Id.* at 281–82; *see* Tex. Ins. Code Ann. §§ 542.051(2), .060(a).

In response, Lincoln has not attempted to distinguish this case, perhaps because there is no meaningful way to do so. Accordingly, for the reasons we discussed in *Old American Insurance Co.*, we hold that Lincoln "does not have standing [as assignee] to assert prompt payment claims" under Section 542.060 of the Texas Insurance Code. *Old Am. Ins. Co.*, 571 S.W.3d at 281–82; *see* Tex. Ins. Code Ann. §§ 542.051(2), .060(a). We dismiss Lincoln's Chapter 542 assignee claim for want of subject matter jurisdiction. *See* Tex. R. App. P. 43.2(c).

## IV. Conclusion

Because the trial court erroneously applied Louisiana law and awarded statutory damages thereunder, we reverse its judgment. Under Texas law, Lincoln does not have standing as the beneficiaries' assignee to bring a statutory claim under Chapter 542 of the Texas Insurance Code, so that claim is dismissed for want of jurisdiction. *See* Tex. R. App. P. 43.2(c). The remainder of GPM's appellate issues litigate the merits of Texas claims that the trial court has not had an opportunity to address. Those portions of the case—Lincoln's claims as the beneficiaries' attorney-in-fact for violations of Chapter 542, its claims as both assignee and attorney-in-fact for violations of Chapter 541, and its claims as both assignee and attorney-in-fact for breach of the common law duty of good faith—are remanded to the trial court for a new trial pursuant to substantive Texas

23

law. *Vizcarra v. Roldan*, 925 S.W.2d 89, 92 (Tex. App.—El Paso 1996, no writ) (reversing and remanding for retrial of all issues under substantive Mexican law after trial court erroneously applied Texas law).

We reverse in full, dismiss in part, and remand in part. *See* Tex. R. App. P. 43.2(c), (d).


/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: August 4, 2022